### In re D. H. McBRIDE & CO.

#### (District Court, S. D. New York. June 29, 1904.)

1. BANKRUPTCY—JURISDICTION OF COURT- -ADVERSE CLAIM TO PROPERTY.

A court of bankruptcy has jurisdiction to determine a controversy between a trustee or receiver in bankruptcy and an adverse claimant of property which is in the actual possession of the trustee or receiver, where such jurisdiction is invoked by the claimant.

2. CONTRACT—CONSTRUCTION—ACQUIESCENCE BY ACCEPTANCE OF PAYMENTS.

An author entitled under her contract with her publishers to a royalty based on the wholesale price of the books, who accepted without objection, as full payment of royalties, checks based on a price 20 per cent. below the publishers' list price, must be held to have acquiesced in the construction so placed on the contract by the publishers, and the payments operated as an accord and satisfaction between the parties.

3. BANKRUPTCY—ASSETS OF ESTATE—COPYRIGHTS HELD UNDER CONTRACT WITH AUTHOR.

A contract between author and publisher for the copyrighting, publication, and sale by the latter of a series of books salable only in Catholic schools and convents, and the payment of a royalty thereon to the author, is a personal engagement, although the publisher may be a corporation; and where it expressly provides that it shall not be transferred without the author's consent, and that, on a failure to carry out its provisions, the copyrights shall revert to the author, such copyrights cannot be sold by a trustee in bankruptcy as an asset of the publisher's estate, against the objection of the author, who is entitled, on petition therefor, to have them assigned by the trustee in accordance with the contract.

In Bankruptcy. On review of referee's decision.

The following is the opinion of Dexter, special commissioner:

This is a proceeding instituted by Mrs. B. Ellen Burke to reclaim certain copyrights, the record titles to which stand in the name of the bankrupt corporation. The essential facts may be very briefly stated.

The copyrights in question cover a series of volumes known as the McBride

Literature and Art Books and Manuals, which were in the main compiled and written by the claimant some years ago. On the 25th of September, 1900, the claimant entered into a written contract with D. H. McBride & Company, an Illinois corporation, for the publication of her manuscript in five volumes, and in pursuance of that agreement three volumes were actually published. Thereafter and in January, 1902, the present bankrupt was incorporated under the laws of the State of New York, and thereupon succeeded to the assets and business of the Illinois corporation, including the copyrights of the literature and art books theretofore published. Subsequent to this reorganization, and on May 8, 1902, Mrs. Burke entered into a new contract with the New York corporation, which provided that the work should be expanded into seven volumes, and set forth in great detail the rights and relations of the parties thereto. It is to procure an interpretation and enforcement of the provisions of this contract that the present proceeding is brought.

The proceeding was instituted by petition setting forth the above facts together with the contract in question, upon which an order to show cause was granted by the district judge, with a stay of proceedings on the part of the receiver. The receiver filed affidavits denying any breach of contract and asserting his right to sell the property in question. Subsequently Augustus H. Skillin was appointed trustee of the bankrupt corporation, and the proceedings were continued against him as such.

At the hearings the trustee was present in person and represented by attorney, and with the acquiescence of the trustee, Mr. Hitchings, on behalf of a number of creditors, was permitted to examine the witnesses, and the testimony so taken was expressly adopted by the trustee, against the objection of the claimant. I overruled the objection and allowed the testimony to stand with the same effect as if elicited by the trustee. Mr. Hitchings filed a brief in opposition to the claim and raised for the first time a preliminary objection to the jurisdiction of this court to dispose of the controversy in a summary proceeding of this nature. The trustee declined to ratify the objection to the jurisdiction, and joined with the claimant in submitting the matter for decision on the merits. Mr. Hitchings, however, insisting on his right to intervene and be heard on behalf of the receiver and certain creditors, I have considered all points raised by him, including the question of jurisdiction.

Passing over the action of the objecting creditors in allowing voluminous testimony to be taken without timely objection to the jurisdiction, which does not commend itself to the commissioner, I am of the opinion that the point is not well taken.

The jurisdiction conferred on courts of bankruptcy by section 2, subdivision 7 of the act over bankrupt estates (Act July 1, 1898, c. 541, 30. Stat. 545 [U. S. Comp. St. 1901, p. 3421]), "to determine all controversies in relation thereto," is applicable to proceedings of this nature, where the property is actually in the possession of the court or its officer, and is subject to distribution under its directions. In re Kellogg (D. C.) 113 Fed. 120; In re McCallum (D. C.) 113 Fed. 393; In re Whitener, 105 Fed. 180, 44 C. C. A. 434.

The claimant by instituting these proceedings has submitted herself to the jurisdiction of the court, and the trustee cannot be heard to object to the same jurisdiction.

It is undoubtedly true that the form of remedy is discretionary. In a proper case the court may, in the exercise of its discretion, refuse on a mere motion to order property in its possession returned to the claimant, and may require the claimant to assert his rights in a plenary action. In re Young, 111 Fed. 158. But this case does not demand such action. The bankrupt's property has been offered for sale as an entirety, and it is of supreme importance to both claimant and creditors that the trustee's right to dispose of the copyrights in question should be speedily determined. It is no answer to this necessity to say that the trustee can only sell the bankrupt's interest, if any, in the disputed property—leaving to the purchaser the burden of an attack on his title. Such action, under the circumstances would be unjust alike to the claimant, whose rights are imperiled by further delay in distributing the publications, and to the purchaser, who should not be compelled to buy a lawsuit.

I am of the opinion that jurisdiction exists and should be exercised in this summary proceeding.

Coming to the merits of the application the claimant contends that the bankrupt corporation and its receiver have failed to keep and perform the covenants and conditions of the contract referred to, in not diligently continuing the sale of the books in question; in failing to properly advertise the same, and in failing to pay the just and full amount of the royalties to which she was entitled; and it is especially urged that the bankruptcy of the corporation has disabled it from performing the terms and conditions of the contract, and the assignment of the copyrights without the written consent of the claimant constitute a breach of contract, entitling the claimant, under the terms thereof, to reclaim the copyrights.

So far as the failure to pay royalties is concerned, I have found, upon the consideration of Mrs. Burke's claim filed herein for unpaid royalties, that whatever may have been the proper construction of the words "wholesale price" as the basis of computation, the claimant by accepting checks sent her in full settlement on these several occasions, and retaining those checks after notice of the corporation's reduction of 20 per cent. from the list price, has acquiesced in that construction of the words, and that such payments operated as an accord and satisfaction between the parties. Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695; Logan v. Davidson, 18 App. Div. 353, 45 N. Y. Supp. 961.

Nor does the evidence convince me that the bankrupt corporation, or its receiver, failed in any material respect to carry out the spirit of the contract in regard to diligently continuing the sales. On the contrary, it was shown that the sales were constantly increasing, and that the change from traveling agents to commission houses and the cessation of the advertisement in the Sunday Companion published by the bankrupt were in good faith and in the exercise of a reasonable business judgment, which was not so prejudicial to the claimant's interest as to entitle her to claim a forfeiture.

The contract obligations assumed by D. H. McBride & Company are, briefly, to cause the whole of the books and manuscript to be published as a series, and copyrighted; to make revisions, additions etc., in said books upon the request of Mrs. Burke, in order to keep them abreast of the times and saleable; to publish the books and manuals with all reasonable speed, and keep on hand enough to supply the trade; to diligently and intelligently, to the best of its ability, enter upon and continue their sale all over the country, and to properly and fully advertise them—the publication, sales and advertising to continue during the time all copyrights, extensions and renewals shall continue. The work to be carried on so that the largest number of sales should be made, to the end that both parties should receive as large a profit as possible. It also agreed to render a semi-annual account, and pay a 6 per cent. royalty on the wholesale price; to keep a full account of books manufactured and sold. Upon its discontinuing and neglecting the publication and sale, or failure to perform the agreement, or to properly endeavor to market the books, "all of said copyrights shall revert to and become the exclusive property of the said party of the first part," who in that event has an option, on ninety days' notice, to purchase all the plates used and in use at the time, at the actual cost price of the latest plates then in use. No sale, assignment or transfer of copyrights or plates covered by them can be made without the written consent of Mrs. Burke. "No assignment or transfer of any interest in the said copyrights or plates shall be valid, or transfer or convey any interest therein unless made with the written consent of the party of the first part" (Mrs. Burke).

After a careful consideration of the terms of the contract and the evidence adduced, I am of the opinion that the claimant is entitled to the copyrights in question, because I must find on the facts and law, that the contract was a personal engagement between author and publisher, involving trust and confidence which cannot be assigned or delegated to another without the author's consent. It is true that the author reserved her own right to assign her royalties, but she also expressly reserved to herself the right to object to an assignment on the part of the corporation. This was clearly within her power. The development of the sales depended upon the character and relations of her publisher in the Catholic book trade. The exclusive market for the books was in parochial schools and convents under the control of the Roman Catholic Church. The religious affiliations and connections of the publisher became, therefore, of

vital importance to the author, for under non-Catholic management for instance, the peculiar influence required to introduce the books into these schools would be entirely lacking. The good will and trade name of D. H. McBride & Company as Catholic publishers were important considerations, of which the claimant cannot be deprived without her consent. She had the right to select her publisher, and cannot, against her will, have another thrust upon her.

That rights arising out of contracts involving a relation of personal confidence cannot be transferred in invitum is an elementary rule. Arkansas Smelting Co. v. Belden, 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246; Bancroft v. Scribner, 72 Fed. 988, 21 C. C. A. 352. But it is urged that this principle applies only to assignment by act of a party, and not to assignment by operation of law, and that in any event, there could be no relation of personal confidence existing between the parties where the party to whom the confidence is extended is a corporation.

Neither of these contentions can be sustained. Assignments by operation of law are sustained upon the principle that, unless expressly excepted, they must be deemed to have been in contemplation of the parties. A lease, for instance, passes to the trustee in bankruptcy (if he so elects), even if containing an express covenant against assignment. But a license under a patent right is held personal to the licensee, and does not pass to a receiver or administrator by operation of law. Oliver v. Rumford Chemical Works, 109 U. S. 76, 3 Sup. Ct. 61, 27 L. Ed. 862; Waterman v. Shipman, 55 Fed. 982, 5 C. C. A. 371.

The distinction, therefore, lies in the nature of the contract, and where that involves personal trust and confidence it is not assignable even by operation of law. As to whether trust and confidence can be reposed in a corporation, I cannot, in these days of corporate management, find any real distinction, such as is suggested, between an agreement entered into between an author and an individual publisher, and a similar agreement with a publishing corporation. The management of the corporation may be such as to command especial confidence. The corporation may have a reputation in the trade of producing attractive publications and enjoy a valuable clientage.

The precise question was considered in England by Sterling, J., in the recent case of Griffith v. Tower Pub. Co., 1 Chancery, 21, where, after reviewing the authorities, the learned justice held it clear that an agreement between author and publisher was of a personal nature, and that the benefit of it was not assignable by a receiver in bankruptcy. An injunction was granted against the receiver, who was threatening to sell all of his rights under the agreement between the author and the bankrupt publisher, to another publishing house. The same suggestion was made in that case as in this, viz., that the receiver was only selling the right, title and interest of the bankrupt, and that only the purchaser was affected by the claim of non-assignability. But the learned justice disposed of the suggestion in the following words:

"It is true that any assignment of the agreement might be inoperative; but still, it might give rise to disputes between the plaintiff and persons who might seek to avail themselves of the position of assignees."

That such disputes do arise is evident from the decision in the leading English case of Stevens v. Benning, 1 Kay & John. 168, affirmed 6 De G. M. & G. 223, where the purchasers of the copyrights at an assignment sale sought to restrain the author from publishing the same work through another publisher. This case, together with Hole v. Bradbury, 12 Chan. Div. 886, and Reade v. Bentley, 4 Kay & John. 656, are additional authorities for the conclusions I have reached in this matter.

There remains only to be mentioned the objection that as the copyright of three of the volumes in question was at the time of the present contract actually vested in an Illinois corporation, to whose right the bankrupt corporation has succeeded, the claimant had nothing to sell, and the new contract was without consideration.

I cannot accede to this proposition. The claimant undertook for a fresh consideration from the new company to enlarge her work from five to seven volumes, and to perform certain revisory services in connection with its publication. It was entirely competent for the new company to contract for the completion of the work and to treat the copyrights as a single matter, for the considerations set forth in the new contract.

Nor is there any merit in the point that the claimant, being an employé of the company, surrendered any personal right to the product of her books, viz., the copyright. There is nothing in the evidence to show that the claimant used the time, employés and instrumentalities of the company in perfecting the manuscript of her various books.

I therefore find and report that under the terms of her contract, the claimant is entitled to copyrights of the seven volumes described as "The McBride Literature and Art Books," and of the seven manuals for the teachers appurtenant thereto. That she is further entitled to purchase the plates of said publications at the actual cost price thereof, on giving notice to the trustee of such intention to purchase.

The title to the copyrights being in the trustee, by operation of law, the trustee should be authorized and directed to assign said copyrights to the claimant, B. Ellen Burke, by proper instruments of assignment.

Latson & Bonynge, for B. Ellen Burke, claimant.
Hector M. Hitchings, for various opposing creditors.
Marshall S. Hager, for trustee in bankruptcy.

ADAMS, District Judge. Report confirmed, with disbursements to be taxed.