In the Matter of Robert A. NOONAN, p/k/a Willie Nile, and d/b/a Victoria Falls Music, and Lake Victoria Productions, Debtor.

No. 81–B–11263.

United States Bankruptcy Court, S. D. New York.

Feb. 22, 1982.

Stroock & Stroock & Lavan, New York City, for debtor; by Lewis Kruger, Alan Kolod and Mark Speiser, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for Arista Records, Inc.; by Michael L. Cook and Herbert F. Kozlov, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

On its motion to convert the debtor's voluntary chapter 7 case to an involuntary chapter 11 case,[1] the moving creditor invites this court to come up with a square holding in its favor on nice, round, undisputed facts. The court must decline the invitation and rule for the debtor as a round hole cannot accept the square peg which sets this case apart from others fitting more snugly into the statutory scheme. That uniqueness is based on who the debtor is, who the creditor is, what it wants from the debtor, and how it can go about getting it!

The controlling facts are not in dispute: Robert A. Noonan (Noonan or debtor) known professionally as Willie Nile, is a songwriter who performs and records his and the popular music of others. On June 24, 1981, Noonan filed a voluntary petition for the relief afforded by chapter 11 of the 1978 Bankruptcy Reform Act, 11 U.S.C. § 1101 *et seq.* (Supp. IV 1980), Pub.L. 95–

---

1. A chapter 7 case under the 1978 Bankruptcy Code is a liquidation of a debtor's assets. The provisions of most of chapter 7 apply only to such a case. Section 103(b), 11 U.S.C. (Supp. IV 1980) § 103(b). A chapter 11 case looks to

598, 92 Stat. 2549 *et seq.*[2] The sworn schedules filed with Noonan's petition reveal there are virtually no free assets from which dividends might be paid to his creditors.[3] His artistic endeavors generate Noonan's sole source of income, and as to these, he is subject to an exclusive recording contract (Arista contract) with Arista Records, Inc. (Arista), the moving party in this dispute. And, as the debtor's endeavors to terminate his relationship with Arista are at the crux of their differences, some key points of the Arista contract should be noted. Noonan entered into it on November 14, 1978 and by its terms he was obligated to record exclusively for Arista for an initial period of eighteen months. Noonan was obligated to record at least two albums during this period and Arista was given an option to extend this eighteen month period for three consecutive periods of like duration.

Noonan did record two albums pursuant to this Arista contract for which Arista advanced approximately $300,000. Noonan is not personally obligated to repay this money; Arista is entitled, on the other hand, to recoup these advances from future royalties. Although these albums received acclaim from critics, sales were modest and royalties fell far below the amount Arista is entitled to recoup.

Nonetheless, Arista has decided to exercise its option to hold Noonan to a second 18-month term, during which time he would be obligated to record two additional albums. There is nothing invidious in this action, as it is clear Arista hopes to recoup its losses from future recordings. Noonan, however, sees things otherwise for he now finds himself in a position where the sales

for a third album would have to exceed one million units to reach the $500,000 recoupment Arista would be entitled to after advancing production costs for this new album.

Dissatisfied with this arrangement, and with his eyes and mind focused on a more favorable artistic and monetary environment, Noonan, as debtor in possession, 11 U.S.C. § 1101(1), moved for an order rejecting the Arista contract as executory, a right given by 11 U.S.C. § 365 to trustees and to chapter 11 debtors in possession by the force of 11 U.S.C. § 1107. The right given to reject executory contracts as a matter of a debtor's business judgment, is part of the warp and woof of the fabric of bankruptcy. It was in the 1898 Act, and kept in later revisions in Sections 70(b) and in the debtor relief chapters, Section 77(b) (Reorganization of Railroads), Section 82(b)(1) (Adjustment of Debts of Political Subdivisions, etc.), Section 116(1) (Chapter X), Section 313(1) (Chapter XI), Section 413(1) (Chapter XII) and Section 613(1) (Chapter XIII). Indeed, plans offered creditors by these debtor relief supplicants under earlier statutes could provide for the rejection of executory contracts. By thus seeking rejection of the Arista contract, Noonan swiftly and surely let Arista know that he would no longer record for that company.[4]

Arista vehemently opposed Noonan's motion and began to prepare for all out war. Perceiving the effusion of time, energy and money he would need to battle Arista on the contract, Noonan exercised his absolute right to convert his chapter 11 case to a chapter 7 case. 11 U.S.C. § 1112(a). Noonan's application acknowledged that the impulse for converting to a chapter 7 case was

---

a debtor's reorganization. Its sections are generally unique to it. 11 U.S.C. § 103(f).

**2.** Unlike the style of the now-repealed 1898 Act, the sections of the 1978 Code are keyed to the same section of Title 11 of the United States Code. Further Title 11 references will not repeat that they may be found in the 1980 Supplement to the 1976 edition.

**3.** Noonan scheduled liabilities of $172,982, exclusive of Arista's contingent claim of $548,132.50. A contingency does not defeat the al-

lowability of a claim, 11 U.S.C. § 101(4) read with 11 U.S.C. § 502(c). He also listed assets valued at $6,398.63, most of which would appear to be exempt under 11 U.S.C. §§ 522(b) and (d).

**4.** The record indicates that all negotiations between the debtor and Arista have broken off. The papers submitted and the representations of debtor's counsel clearly reveal the debtor's decision not to record, at least for Arista.

to take advantage of the automatic rejection of executory contracts given by 11 U.S.C. § 365(d)(1). Noonan quite properly sensed that his bankruptcy trustee could not assume the Arista contract, for while he might force Noonan to the recording studio, he could not make him sing or play. Noonan also understood that the Arista contract is not the kind of contract capable of assignment by the trustee after assumption.[5] As there could be no assumption or assignment, the trustee would either reject or the Arista contract would be deemed rejected. 11 U.S.C. § 365(d)(1) is clear as to this synergism. Thus, the court entered an order achieving the conversion to chapter 7. The United States Trustee appointed an interim trustee who later qualified as trustee. 11 U.S.C. § 15701.[6]

Understandibly shaken by the direction Noonan's life may take following the unfolding of the chapter 7 process and the exclusion of Arista from Noonan's future, the former moved under 11 U.S.C. § 706(b) to put the debtor back into chapter 11 nullifying his chapter 7 choice.[7] Arista also moved the court to shorten Noonan's time to file his chapter 11 plan and to permit Arista to file its plan, a course permitted by 11 U.S.C. § 1121's scheme.[8]

Arista's position is that it will fund a plan which will give the debtor's creditors, Arista included, more than they could hope to garner from a liquidation of his non-exempt property. Moreover, Arista says that its plan will give Noonan a $10,000. advance to be recouped later.[9]

But all of this generosity to Noonan's other creditors is not engendered by eleemosynary motives. Any such plan offered by Arista is dependent upon a condition precedent, *i.e.*, the assumption and the affirmance by Noonan of the Arista contract.[10]

Arista claims to find support for all this in the authority in the 1978 Code for an involuntary chapter 11 case, the impulse for which was Congress' feeling that a debtor's creditors should be able to realize on his assets through reorganization just as in a liquidation. H.R.Rep.No.95-595, 95th

---

5. See 11 U.S.C. § 365(c) for the protection afforded to third parties from a trustee's or debtor in possession's attempts at assumption or assignment. *In re Taylor Manufacturing Inc.*, 6 B.R. 370 (Bkrtcy.N.D.Ga.1980); *In re Zotti*, 16 B.R. 625 (Bkrtcy.S.D.Fla.1981).

6. The Southern District of New York is a United States Trustee District. 11 U.S.C. § 1501(2).

7. Section 706(b) reads this way:
"(b) On request of a party in interest and after notice and a hearing the court may convert a case under this chapter to a case under chapter 11 of this title at any time." Unlike chapter XI under the 1898 Act, a chapter 11 under the Code may be filed involuntarily against an eligible debtor. 11 U.S.C. § 303(a). In the chronology of what has occurred here, a reconversion to chapter 11 under 11 U.S.C. § 706(b) would in effect make this an involuntary chapter 11 case.

8. Pending this court's disposition of the Arista motion, the time for Noonan's chapter 7 trustee to assume or reject the Arista contract was extended.

9. This court is not moved by Arista's argument that this is a test case for the industry that requires, in the big picture, that it succeed. That Arista believes that the future of both the record industry and budding performing artists may be affected by a decision adverse to it may be a valid concern for record companies and the contractual exclusivity of their artists. However, this court is well aware that any business might be adversely affected by someone else's bankruptcy—the record industry is not unique to this plight.
See affidavits of Clive J. Davis, president of Arista, Inc.; Stanley M. Gortikov, president of the Recording Industry Association of America, Inc., attached to Arista's November 27, 1981 Order to Show Cause, and Arista's answer to Noonan's motion to reject.

10. Article V of Arista's proposed plan reads as follows:
*"Condition Precedent*
This plan shall not take effect and shall be of no effect unless the Bankruptcy Court shall have entered an order pursuant to 11 U.S.C. § 365(a) providing for the assumption and affirmance of the Arista Contract on or before March 31, 1982".
Arista apparently realizes that neither it nor the court can compel Noonan to assume the contract, and that in an involuntary chapter 11 case, only the debtor (or a trustee appointed under 11 U.S.C. § 1104(a)) can reject an executory contract under 11 U.S.C. § 365(a), or 11 U.S.C. § 365(d)(2).

Cong., 1st Sess. 322 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787. In furtherance of this, Arista says that reconversion to chapter 11, assumption of its contract with Noonan and confirmation of its plan will work and everyone will be happy.

Everyone except Noonan, that is. He says nothing can compel him to assume or reaffirm his contract with Arista and that this court, even if it could force him, should not as a matter of equity, for to do so would interfere with his fresh start and place him in involuntary servitude.[11]

Therefore, Noonan argues that for the court to decree reconversion would be a futile act pre-ordained to result in his return to chapter 7 as Arista's chapter 11 dreams can never be realized. So, he says, Arista's motion should be denied, a view with which the court agrees.

■ The court has carefully considered these factors for all are clearly relevant, since the decision to convert under Section 706(b) is left to the sound discretion of the court, an exercise which should include consideration of the best interests of both the creditors and the debtor. See House Report, *supra*, at 380; S.Rep.No.95 989, 95th Cong., 2d Sess. 94 (1978). But, of equal importance is "what is fair and equitable under the *peculiar circumstances of the particular case, guided by the spirit and purpose of the law." Manekas v. Allied Discount Co.,* 6 Misc.2d 1079, 166 N.Y.S.2d 366 (N.Y.Sup.Ct.1957).

Wisely, Congress did not give creditors the unfettered right to insist on conversion of a debtor's case for, by leaving this decision to the court's discretion, the court is free to explore "what is below the surface of the statute and yet fairly part of it". Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 533 (1947).

Arista says that in exercising its discretion the court should not consider the Noonan contract now. And so, the court now addresses what it considers relevant to Arista's contention.

The purpose of the usual chapter 11 case is a business reorganization. It is premised upon the theory that the assets of a business in use are more valuable than those same assets sold in a liquidation sale for the benefit only of their purchaser. Efforts are made to preserve and conserve the value of assets. House Report, *supra*, at 22. And by permitting involuntary reorganization, Congress reasoned that creditors should be able to realize on these assets through reorganization, as well as liquidation. But these typical factors are foreign to this case, as it simply refuses to be typical and application of customary chapter 11 principles on the facts here cannot work. This debtor is an individual; an artist. He has no tangible assets available for distribution. He earns his living by his creativity, by his voice, and by the combination of the two. The Arista contract is merely the instrumentality for the exploitation of the debtor's talents.

The Arista contract is clearly an executory contract. 11 U.S.C. § 541 vests the debtor's estate with all the debtor's property as of the commencement of the case. A seeming exception to the sweep of this rule continues for executory contracts, for the Code continues prior law by postponing vesting of the debtor's rights and duties until assumption.[12] 2 *Collier on Bankruptcy* (15th ed.) ¶ 365.01.

■ But a personal service contract was never the kind of contract treated by Section 70(b) of the 1898 Act; it never was and could not be property of the estate for the purposes of the section. The law under the 1898 Act was clear and there is nothing in the 1978 Code indicating any change. Where an executory contract between the debtor and another is of such a nature as to be based upon the debtor's personal skill,

---

11. Not all of Noonan's creditors go along with Arista nor do they agree with Arista's view as to what is in their best interests.

12. Section 70(b) of the 1898 Bankruptcy Act governed executory contracts. 11 U.S.C. (1976 ed.) § 110(b). See generally, 4A *Collier on Bankruptcy* (14th ed.) ¶ 70.43 *et seq.*

the trustee does not take title to the debtor's rights and cannot deal with the contract. See 4A *Collier on Bankruptcy* (14th ed.) ¶ 70.22(3); 3 *Remington on Bankruptcy*, § 1228; *In re D. H. McBride*, 132 F. 285 (S.D.N.Y.1904); *Villar & Co., Inc. v. Conde*, 30 F.2d 588 (1st Cir. 1929). The Arista contract is simply not the kind of an asset to which the creditors can look by insisting that the debtor assume it.

Since a personal service contract does not vest in the debtor's trustee, services performed under it would appear not to be "for the benefit of the estate, but rather for the personal benefit of the bankrupt...". *Ford, Bacon & Davis, Inc. v. Holahan*, 311 F.2d 901, 904 (5th Cir. 1962). For policy, practical and constitutional reasons, these contracts are *sui generis.* Clearly, the answer to Arista is that its contract is not an asset that can be used for its benefit nor in the debtor's plan absent his consent. And, as it appears to be Noonan's only potential asset of value, the underpinning for Arista's conversion motion has been removed.

To be sure, Arista's frustration is understandable. However, it must have known it was dealing in an area which historically fashioned its own rules. It is a longstanding rule that courts of equity will not order specific performance of personal service contracts. 5A *Corbin on Contracts*, § 1204 (1964 ed.); *Restatement (Second) of Contracts*, § 367 (1981); *Arkansas Smelting Co. v. Belden*, 127 U.S. 379, 8 S.Ct. 1308, 32 L.Ed. 246 (1888). Notwithstanding the lip service paid the old adage that "a bird that can sing and will not sing, must be made to sing", *De Rivafinoli v. Corsetti*, 4 Paige Ch. 263, 270 (N.Y.Ch.1833), "(W)e insist upon liberty even at the expense of broken promises". 5A *Corbin on Contracts, supra.* And, courts have always understood that an artist does not work well under compulsion. See generally, *De Rivafinoli v. Corsetti, supra; Hamblin v. Dinneford*, 2 Edw.Ch. 528 (N.Y.Ch.1835). And only the other day, the New York Court of Appeals reviewed the rules and the reasons for the rules that have developed in this area of personal service contracts and enforceability of such agreements.

In *ABC v. Wolf*, 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363 (1981), the plaintiff, ABC, and the defendant, Wolf, a prominent New York City sportscaster, had entered into an employment contract containing a good faith negotiation and right of first refusal clause. This provision operated to bind Wolf to negotiate with ABC for 90 days, following which Wolf was required to afford ABC a right of first refusal before he accepted another offer of employment. In its action, ABC alleged that Wolf had breached this provision and sought specific performance as well as an injunction to bar Wolf's employment at CBS. The Court of Appeals refused to grant this relief after its review of the principles of specific performance applicable to personal service contracts and its observations that

> Courts of equity historically have refused to order an individual to perform a contract for personal services (e.g. 4 Pomeroy, Equity Jurisprudence (5th ed). § 1343 at pp. 943–944; 5A Corbin, Contracts, § 1204; see *Haight v. Badgeley*, 15 Barb 499; Willard, Equity Jurisprudence, at pp. 276–279). Originally this rule evolved because of the inherent difficulties courts would encounter in supervising the performance of uniquely personal efforts. (e.g. 4 Pomeroy, Equity Jurisprudence, § 1343: 5A Corbin, Contracts, § 1204; see, also *De Rivafinoli v. Corsetti*, 4 Paige Ch. 264, 270). During the Civil War era, there emerged a more compelling reason for not directing the performance of personal services: the Thirteenth Amendment's prohibition of involuntary servitude. It has been strongly suggested that judicial compulsion of services would violate the express command of that amendment. (*Arthur v. Oakes*, 63 F. 310, 317: Stevens, Involuntary Servitude by Injunction, 6 Corn LQ 235: Calamari & Perillo. The Law of Contracts (2d ed), § 16–5).

52 N.Y.2d at 401–2, 438 N.Y.S.2d 482, 420 N.E.2d 363. (Footnotes omitted).

These considerations are the indices of a mature, democratic society. And hand in hand with their reaffirmation is recognition that where problems have arisen in a contractual relationship calling for the performance of purely personal services, the termination of that relationship terminates the problems, to paraphrase Mr. Justice Frankfurter in *Perez v. Brownell*, 356 U.S. 44, 60, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958). It follows from all these generalities not only that Noonan cannot be compelled to abide by his contract with Arista but that it must be rejected for it cannot be assumed unless Noonan wants it so. It therefore must also follow that Arista's attempt to restore Noonan to chapter 11 status has to be denied for its rationale is rejected by Noonan on the facts and by this court on the law.

And that result is consistent with Congress' views found elsewhere. Congress was not unaware that the prohibition against involuntary servitude loomed large in bankruptcy, and Congress therefore magnified its concern on the area of involuntary chapter 13 cases. 11 U.S.C. §§ 1301 *et seq.* Here Congress acted to dispel even the remotest possibility of involuntary servitude by prohibiting involuntary chapter 13 cases. 11 U.S.C. § 303(a); 11 U.S.C. § 706(c).

Arista would have the court ignore this expression of a general Congressional mood by insisting that Congress' concerns in the chapter 13 case are irrelevant to the motion to convert Noonan to a chapter 11 debtor pursuant to 11 U.S.C. § 706(b), for Arista says that it is a party in interest and that Noonan, at least facially, is an eligible chapter 11 debtor. 11 U.S.C. §§ 109(a), (d). So, Arista concludes, the statute is satisfied and it must prevail. But this syllogism ignores the reality. Courts are often faced with situations not envisioned by the most gifted legislative imagination.

The fact is that Congress perceived the usual 13 case [13] as emanating from a non-business debtor and determined to make the relief of that chapter voluntary in order to avoid the spectre of involuntary peonage for a hapless debtor laboring for his creditors on their petition and their plan which could strip the debtor and his family of all that made their lives otherwise worth living.

It is also the fact that Congress perceived chapter 11 of the 1978 Code, an amalgam of many of the features of chapters X, XI and XII of the 1898 Act, as a reorganization device, mainly for non-individually operated businesses, and occasionally for the small sole proprietor ineligible for chapter 13 relief. See, fn. 13, *supra.*[14] From that vantage point, it was Congress' view that the chapter 11 petition could emanate from the debtor's creditors, thereby bringing the debtor involuntarily into the bankruptcy process.[15]

The possibility, therefore, that the rare and unique kind of fact pattern present here in which there lurks the real possibility of the involuntary servitude with which

---

13. Under the 1898 Act, chapter XIII was available only to wage earners, read to mean individuals who worked for wages, salary or hire. Section 1(32), 11 U.S.C. (1976 ed.) § 1(32).

Under the 1978 Code, chapter 13 is available only to individuals with regular income as defined in 11 U.S.C. § 101(24). This includes people whose regular income is not derived from wages and, by the breadth of 11 U.S.C. § 109(e), includes small sole business proprietors. House Report, *supra*, at 320; Sen. Report, *supra*, at 118–21.

In the first two years of life under the 1978 statute, it is safe to say that, overwhelmingly, chapter 13 was utilized by non-business consumers, the bulk of whom would have been fit subjects for now-repealed chapter XIII of the 1898 Act. For the one year period ending September 30, 1981, there were 4,828 business chapter 13 petitions filed nationwide. During this same period, consumer chapter 13 petitions numbered 84,308. Federal Judicial Workload Statistics, Administrative Office of the United States Courts (1982) at A–56 and A–58. (Hereafter referred to as Statistics).

14. The report for 1981 referred to in fn. 13 discloses that 7,795 business chapter 11 petitions were filed and 803 non-business chapter 11's. Statistics at A–56, 58. Of these 8,600 chapter 11's, 158 began via the involuntary route. Statistics at A–54.

15. An involuntary chapter 7 or chapter 11 is grounded on the allegation that "the debtor is generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h).

Congress was concerned in chapter 13 never occurred to it when it perceived chapter 11.

But this is not to say that this court should ignore Congress' concerns on facts it did not foresee because comment was made about concerns on facts it did foresee. The policy against forcing an individual to work against his will is applicable, if the facts present themselves, in chapter 11 as well as in chapter 13. Congress' concerns are so strongly expressed in connection with chapter 13 that this court would be remiss were it to apply them only there.

Congress voiced its concerns in these words:

> As under current law, chapter 13 is completely voluntary. This Committee firmly rejected the idea of mandatory or involuntary chapter XIII in the 90th Congress. The thirteenth amendment prohibits involuntary servitude. Though it has never been tested in the wage earner plan context, it has been suggested that a mandatory chapter 13, by forcing an individual to work for creditors, would violate this prohibition. On policy grounds, it would be unwise to allow creditors to force a debtor into a repayment plan. An unwilling debtor is less likely to retain his job or to cooperate in the repayment plan; and more often than not, the plan would be preordained to fail. (Footnotes omitted).

See House Report, *supra*, at 120, and Sen. Report, *supra*, at 32, U.S.Code Cong. & Admin.News 1978 at 6080. See also, *In re Markman*, 2 C.B.C.2d 653, 5 B.R. 196, 6 B.C.D. 632 (Bankr.E.D.N.Y.1980), where these same principles supported an order barring a trustee from seeking to extend the life of a debtor's plan in a chapter 13 case beyond the period fixed by Congress.

It is thus clear from the strong policy considerations of Congress which, on the facts here, touch on Constitutionally protected areas, that Arista's motion, addressed to this court's discretion, must fall. This is so because the relief it seeks, *i.e.*, reinstatement of Noonan's chapter 11 case, is itself destined to fail for the reasons already described.[16]

Finally, it is clear that Arista's proposed plan would defeat a primary purpose of the Code "to allow the individual debtor to obtain a fresh start, free from creditor harassment and free from the worries and pressures of too much debt".[17] House Report, *supra*, at 125. See *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). If the debtor could be compelled to assume the Arista contract, he would leave this bankruptcy court subject to at least $300,000. of indebtedness, which Arista could recoup from his future earnings. Moreover, as Arista concedes, a confirmed plan reaffirming the contract would subject Noonan to the very real likelihood of protracted litigation. Clearly, the full potential reach of Arista's "scheme" would deprive Noonan of the full scope of his discharge.

■ As the full measure of a debtor's fresh start flowing from the bankruptcy process is vital to Congress' mission in enacting the Code, *cf., Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516, 70 S.Ct. 755, 765, 94 L.Ed. 1017 (1950), anything which would frustrate the mission must be scrutinized carefully. Arista's attempts to manipulate the bankruptcy process for its own ends is found seriously wanting.

■ While the debtor has moved for the imposition of costs and attorney's fees on allegations of Arista's general bad faith, as well as pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927, this court is of the view that Arista's motion was made on a not totally specious reading of the statute. At least facially, Arista could claim a statutory basis to achieve what it sought.

---

**16.** This court does not have to determine the lurking constitutional question at this juncture. However, if the chapter 11 process were permitted to unfold, that issue would arise at confirmation of Arista's plan. 11 U.S.C. § 1129(a)(3) prohibits the court from confirming a chapter 11 plan that is "by any means forbidden by law".

**17.** Except as otherwise provided by the plan, chapter 11 provides for discharge upon confirmation. 11 U.S.C. § 1141(d).

Arista's motion to convert to chapter 11 is denied as is the debtor's motion for costs. It is so ordered.