In re ONTARIO LOCOMOTIVE & INDUSTRIAL RAILWAY SUPPLIES (U.S.) INC., Debtor.

Bankruptcy No. BK 89–10759 C.

United States Bankruptcy Court, W.D. New York.

April 2, 1991.

Jane B. Wolfe, Asst. U.S. Atty. Buffalo, N.Y., for U.S.

John P. Dee, Buffalo, N.Y., for debtor.

JOHN W. CREAHAN, Bankruptcy Judge.

Presently before the Court is the motion of the United States of America, on behalf of the Department of the Navy (Navy), for relief from the automatic stay provisions of section 362(a) of the Bankruptcy Code. 11 U.S.C. § 362(a).

The relationship between the debtor, Ontario Locomotive and Industrial Railway Supplies (U.S.) Inc. (Ontario), and the Navy, had its genesis in the award of a contract by the Navy to Ontario. The contract, awarded September 13, 1988, called for the "remanufacture" of three Navy locomotives by Ontario. Many of the details of the contract are summarized in the affidavit supporting the motion. Also annexed to the moving papers are the affidavits of two officers of the Navy. One Walter G. Hilsabeck is Manager of Railway Programs, the other, John T. Smith, is the Head of the Contracts Department. Their affidavits contain a summary of the contract and of the important part the locomotives play in Navy operations. They also advise that on review of financial data and on other information received, they are of the opinion that Ontario will not be able to handle the contract. The officers conclude that they should be able to terminate the contract for the "convenience of the Government" and that it is in the Government's interest to do so.

While the supporting papers seem to argue that, under the contract and applicable law, cause exists to terminate the contract, there is no real, demonstrable evidence to that effect. Most of the statements made are conclusory and based, in part at least, on information and belief. In any event, this is clearly not the basis for the relief requested. It is clear from the tenor of the affidavit of the Assistant United States Attorney, that the "cause" upon which the motion is based, is that under section 365(c) of the Code and the provisions of 41 U.S.C. § 15, barring transfer of public contracts, and absent the consent of the Navy, the contract cannot be assumed. The Court does not agree.

The argument of the United States is, for the most part, premised on the decision of the Third Circuit Court of Appeals in *In re West Electronics, Inc.*, 852 F.2d 79 (3d Cir.1988). The Court states in its opinion that "in the context of the assumption and assignment of executory contracts, a solvent contractor and an insolvent debtor in possession going through bankruptcy are materially distinct entities," at p. 83. Based on that logic, the Court concluded that in light of the interplay between the Anti–Assignment Act, 41 U.S.C. § 15, and the Bankruptcy Code, 11 U.S.C. § 365(c), that absent the consent of the United States, the debtor could not assume its pre-petition contract with the government.

The Anti–Assignment Act, at section 15, provides in pertinent part:

No [government] contract or order or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

In general, the Bankruptcy Code, section 365 at subsection (a) enacts that the trustee (debtor in possession), "subject to the court's approval, may assume or reject any executory contract or lease of the debtor." Subsection (c), however, provides that:

The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) Applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession ... and

(B) Such party does *not* consent to such assumption or assignment.

The Third Circuit's decision in *West Electronics* and the "separate entity" theory there manifest, has not been lacking for hostile critics. First and foremost of these was Judge Higginbotham. In a separate opinion in the same case, at p. 84, he stated:

... I do not believe that a 'solvent contractor and an insolvent debtor in possession going through bankruptcy,' at 83, are *different* entities for the purposes of the Non–Assignment Clause. The interpretation of the *Adana* court notwithstanding, I think that that provision really meant to avoid having the U.S. government contractually bound to a wholly separate entity that received an assignment from the actual contracting party. I do not believe that when it enacted Section 15 of Title 41, Congress considered the issue of whether a debtor in possession should be viewed as a party different than the debtor.

The United States Supreme Court, in reconciling conflicting provisions of the National Labor Relations Act and the Bankruptcy Code, also found the theory unrealistic. In *National Labor Relations Board v. Bildisco & Bildisco, Debtor–In–Possession, et al.* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Court would appear to have laid to rest the "separate entity" doctrine for all time. At p. 528, 104 S.Ct. at p. 1197 the Court first points out that if the post-petition debtor were a "new entity" it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts because it would not be bound by them in the first place. The Court then goes on to state:

For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing.

Justice Brennan, author of the dissenting opinion, concurs, however, that the Court properly rejected the "new entity" theory.

Further disagreement with the Third Circuit's rationale expressed in *West Electronics*, is evident in those cases which hold that subsection (c) of section 365 is not even applicable to executory contracts of the nature of that before the Court. In the case of *In the matter of Terrace Apartments, Ltd.*, 107 B.R. 382 (Bkrtcy.N.D.Ga. 1989), Bankruptcy Judge Kahn of the Northern District of Georgia, reiterated his earlier decision, that section 365(c), "applies only to non-delegable contracts such as personal service contracts." *In re Fulton Air Service, Inc.*, 34 B.R. 568 (Bkrtcy.N.D.Ga. 1983). Judge Kahn acknowledges the considerable authority to the contrary. *See e.g. In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir.1984); *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935 (5th Cir.1983); Pennsylvania Peer Review Org., Inc. v. U.S. (In re Pennsylvania Peer Review Org. Inc.)* 50 B.R. 640 (Bkrtcy.M.D.Pa.1985). *In re West Electronics, Inc.*, 852 F.2d 79 (3rd Cir.1988).

In his earlier decision in *Fulton Air Service*, Judge Kahn comments on the lack of substance in the legislative history and the absence of any reference to personal service contracts. The decision continues "The drafters did state, however, that 'executory contracts requiring the debtor to perform duties *non delegable* under applicable non-bankruptcy law, should not be subject to assumption against the interest of the non-debtor party.'" Commission Report. H.R.Doc. 137, 93d Cong. 1st Sess. at 199 (1973) (emphasis added.) The *Fulton* case was more concerned with the debtor's authority to "assign" rather than with the right to assume. In that context, commenting on the Fifth Circuit holding in *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983), the Court states:

> Under the *Braniff* holding, any executory contract or unexpired lease would be unassignable if 'applicable law' excused acceptance of performance. The question then becomes what does the language 'notwithstanding a provision in ... applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection,' which appears in § 365(f), mean? The Fifth Circuit's interpretation renders this portion of § 365(f) meaningless.

*Fulton Air Service* at 572.

This Court is convinced, as was Judge Kahn, that section 365(c) was meant to be narrowly confined to personal service contracts which calls for the performance of non-delegable duties.

The genesis of this "applicable law which excuses a party ... from accepting performance from or rendering performance to" one other than the contracting party is expounded at some length in *In the matter of Noonan*, 17 B.R. 793 (Bankr.S.D.N.Y. 1982). It is rooted in the long standing rule that courts of equity will not order specific performance of personal service contracts. *Noonan* p. 798. Not only was this rule clear under the 1898 Act, "there is nothing in the 1978 Code indicating any change." *Noonan* p. 797.

As recently as July, 1990, yet another Court has refused to follow the doctrine set forth in *West Electronics*. In the case of *In re Hartec Enterprises, Inc.*, 117 B.R. 865 (Bankr.W.D.Tex.1990), the Court engages in an exhaustive discourse on several facets of the issue presently before this Court. Initially, it analyzes the construction and application of 41 U.S.C. § 15, the "anti assignment" statute, on which the Navy relies. The enactment by its terms is limited to the *"transfer"* of a government contract "by the party to whom such contract ... is given to any other party." Upon the authority of cases cited therein, Bankruptcy Judge Clark rejects the argument that "the commencement of the case" in bankruptcy or the assumption of the debtors pre-petition government contract by the debtor in possession, triggers a *transfer* for the purpose of 41 U.S.C. § 15.

The *Hartec* decision then analyzes section 365 of the Code and the linguistic changes wrought by the 1984 and 1986 amendments to section 365(c)(1). The Court finds persuasive Judge Clark's conclusion that "[a] fair reading of the statute [as amended] suggests that, so long as the debtor or debtor in possession were to continue performance under the contract, the prohibition on assumption or assignment would not apply." *Hartec* p. 870.

For the purposes of the matter subjudice, a question of assumption only, this Court concludes, as does *Hartec*, that Congress did not intend to bar assumption of any contract as long as it will be performed by the debtor or debtor in possession. *See also: Thompson v. Commissioner of Internal Revenue.* 205 F.2d 73 (3rd Cir. 1953). This interpretation is in harmony with the purposes of both 41 U.S.C. § 15 and 11 U.S.C. § 365 and will never result in the requirement that the non-debtor party to a contract need do business with a stranger. Whether the Navy has the right to terminate the contract on other grounds will have to abide another day and another proceeding. The Court is satisfied that neither 41 U.S.C. § 15 nor 11 U.S.C. § 362(d) are the appropriate vehicles for

the severance of the debtor's rights under the contract (See Judge Higginbotham's separate opinion, *West Electronics*, 852 F.2d at 84).

The motion of the United States is denied.

SO ORDERED.