**In re Tia CARRERE, Debtor.**

**Bankruptcy No. LA 86–03670–GM.**

United States Bankruptcy Court,
C.D. California.

July 16, 1986.

Robert Altagen, Los Angeles, Cal., for debtor (Tia Carrere).

Mary G. Whittacker and Gary M. Lape, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for creditor (David Rudich).

Louis R. Miller and Lawrence B. Steinberg, Wyman, Bautzer, Rothman, Kuchel & Silbert, Los Angeles, Cal., for moving party (ABC).

Richard I. Oetting, Barton, Klugman & Oetting, Los Angeles, Cal., for creditor (Steve Sarich, Jr.).

## MEMORANDUM OF OPINION RE MOTION TO REJECT EXECUTORY CONTRACT

GERALDINE MUND, Bankruptcy Judge.

### STATEMENT OF FACTS

In August, 1985, Tia Carrere ("Carrere") entered into a personal services contract with American Broadcasting Company ("ABC") whereby she agreed to perform in the television series "General Hospital" from that time until August, 1988 ("ABC Contract"). Under the terms of the contract, Carrere was guaranteed employment on the average of 1½ performances per week. She was to be paid between $600 and $700 for each 60–minute program in which she performed.

While the contract with ABC was still in effect, Carrere agreed to make an appearance on the show "A Team." Under the terms of her agreement with Steven J. Cannell Productions ("A Team Contract"), if she became a regular on A Team, she would make considerably more money over the life of the contract than if she remained on General Hospital.

Although a state court suit was filed by ABC against Carrere for breach of contract due to her agreement with A Team, it appears that no actual breach of the ABC contract will take place until the option in the A Team Contract has been exercised.

On March 4, 1986, Carrere filed her voluntary petition under Chapter 11. The next day she filed a Notice of Rejection of Executory Contract, seeking to reject the ABC Contract. A motion to reject the ABC Contract was filed by the debtor and the matter was set for hearing.

In her declaration in support of the motion to reject, Carrere makes it clear that her primary motivation in seeking the protection of this Court was to reject the contract with ABC so as to enter into the more lucrative contract with A Team. In fact, she claims she did not enter into the contract with A Team until she had obtained advice that the bankruptcy would allow her to reject the contract with ABC. In her schedules she claims unsecured debt only. Her stated liabilities are $76,575 and her assets are $13,191. The amount of debts is disputed by ABC.

ABC vigorously opposed the rejection of its contract and has sought extensive discovery concerning Carrere's liabilities and motivations in filing this bankruptcy. ABC also brought a motion to dismiss the Chapter 11 proceeding on the grounds that it was filed in bad faith.

### ANALYSIS

The key issue to be determined by this Court is whether a debtor, who is a performer under a personal services contract,

is entitled to reject the contract by virtue of the provisions of 11 U.S.C. § 365.[1] If so, what criteria must be applied?

### A Personal Services Contract is not Property of the Estate in Chapters 7 or 11

■ The concept of § 365 is that the trustee, in administering the estate, may assume (and even assign) contracts which are advantageous to the estate and may reject contracts which are not lucrative or beneficial to the estate. 2 Collier on Bankruptcy (15th Ed.) ¶ 365.01. It is not the trustee's duty to benefit the debtor's future finances, but he is to maintain the property of the estate for the benefit of the creditors.

■ The threshhold issue to be determined is whether the ABC contract is "property of the estate." If it is not, the trustee has no standing to assume or reject it.[2]

When the Bankruptcy Code became operable in 1979, it radically expanded the concept of property of the estate. Under the Bankruptcy Act of 1898, § 70 identified specific items which would become property of the estate. The Bankruptcy Code begins with the concept that everything is property of the estate unless it is specifically excluded or unless the debtor thereafter exempts it.

■ 11 U.S.C. § 541(a)(6) states that property of the estate does not include "earnings from services performed by an individual debtor after the commencement of the case." This is limited to cases under Chapter 7 or 11, as post-petition earnings of the debtor become property of the estate in Chapter 13 cases (11 U.S.C. § 1306). The post-petition earnings from personal services contracts are thus excluded from the Chapter 7 or Chapter 11 estate. Does this exclude the contract itself?

Although no specific legislative history is set forth describing the language of 11 U.S.C. § 541(a)(6), it appears clear that by removing from the estate post-petition earnings from personal services contracts, Congress was intending to retain the concept of § 70(a)(5). The language of § 541(a)(6), which excludes post-petition proceeds from property of the estate, is an enactment of case law which specified that where an executory contract between the debtor and another is based upon the personal service or skill of the debtor, the Trustee does not take title to the debtor's rights in the contract. *Ford, Bacon & Davis, Inc. v. M.A. Holahan*, 311 F.2d 901 (5th Cir.1962). (See discussion in 4A Collier on Bankruptcy, (14th Ed.) § 70(a)(5), paragraph 70.22).

Under the Code, it has been held that a contract for personal services is excluded from the estate pursuant to both § 541(a)(6) and § 365(c). *In re Bofill*, 25 B.R. 550 (Bankr.S.D.N.Y.1982). The foremost recent opinion on this matter is *In re Noonan*, 17 B.R. 793 (Bankr.S.D.N.Y.1982), which is cited by both sides in support of their respective positions. While Noonan is usually cited for the proposition that a debtor may not be forced to assume a personal services contract, it also deals with the personal services contract as property of the estate.

In *Noonan* the debtor was also a performer. He had entered into a personal services contract with a recording company, which wished to exercise its option and require him to record new albums.[3] Noo-

---

1. The practical issue raised here is whether Carrere may deprive ABC of a cause of action for a negative injunction if she seeks further employment under the A Team Contract.

2. The right of the Trustee or of the debtor-in-possession to possess and control property is created by the Bankruptcy Code (11 U.S.C. §§ 704(1), 1106, 1107). It grants standing to deal with "property of the estate." There is no right given to a trustee or a debtor-in-possession to take control of property which is *not* property of the estate.

3. In *Noonan* the record company was an undisputed creditor of the debtor. Here there is a question of whether ABC is a creditor of Carrere until and unless a breach of contract occurs. The Court finds that ABC is certainly a "party in interest" and that the issue of creditor-status is not relevant to the situation under discussion.

nan, a debtor-in-possession, sought to reject the contract. When the recording company vigorously opposed Noonan's motion, Noonan converted to Chapter 7, knowing that the trustee could not assume the contract, nor could he force the debtor to perform. Therefore the contract would be automatically rejected.

The recording company moved to reconvert to Chapter 11 and to be allowed to confirm a creditor's plan requiring Noonan to assume the contract and perform under it. The Court denied the motion. Among the grounds for denial was the holding that a personal services contract is not property of the estate. *Noonan* at 797–8.

■ The *Noonan* case did not deal with the issue of rejection of a personal services contract, for the debtor's motion to reject was never heard. But the case clearly held that a personal services contract is not property of the estate. The Court finds this line of reasoning to be persuasive.

■ Since the trustee has no interest in the contract, he has no standing to act at all under § 365. Therefore, he cannot assume or reject the contract.

### The Rights of a Debtor-in-Possession are No Greater Than Those of a Trustee

An argument might be made that the debtor-in-possession, by virtue of the fact that she is also the individual who can perform the contract, has greater rights than the trustee and therefore can assume or reject the contract. The Court does not agree with this.

■ Upon the filing of a Chapter 11, Ms. Carrere created a new entity called a debtor-in-possession. That debtor-in-possession is not identical to the debtor herself. She is granted the rights and duties of a trust-

ee (11 U.S.C. § 323). Therefore while the debtor (Tia Carrere) may have duties under the ABC contract and may wish to reject those duties, the debtor-in-possession (who represents the estate of Tia Carrere) has no rights or duties whatsoever in the contract and therefore is a stranger to it.

■ In her role as debtor-in-possession, she has no interest in the proceeds of the personal services contract, nor in the contract itself. The contract never comes under the jurisdiction of the Bankruptcy Court. The Court has no interest, the estate has no interest, and even if the debtor-in-possession were allowed by consent of all parties to assume the contract under 11 U.S.C. § 365, the assumption would not create an asset of the estate, for the proceeds would not be an asset of the estate, nor would the contract be assignable. Therefore, no rights of assumption are vested in the debtor-in-possession.

■ The only one who has rights or duties under the contract is the debtor herself. But the statutory scheme of Section 365(d)(1) does not allow the debtor to reject an executory contract. It only allows the trustee to do so.

■ Therefore this Court finds that § 365 concerning assumption or rejection of a contract does not apply to a personal services contract in a bankruptcy case under Chapter 7 or 11, whether or not a trustee has been appointed.[4]

### It Would be Inequitable to Allow the Contract to be Rejected

Beyond the legal arguments described above, the Court is concerned about the good faith issue of allowing a debtor to file for the primary purpose of rejecting a per-

---

**4.** The Court has no need at this time to deal with rejection of a contract under Chapter 13. Unlike Chapter 7 or 11, post-petition earnings from a personal services contract do become property of the estate under Chapter 13. Therefore the theories set forth to this point in the opinion are not applicable to Chapter 13. However, the Court does question the equity of al-

lowing a Chapter 13 trustee to reject the contract, while denying the Chapter 13 trustee the power to assume it.

The issues of good faith, equity, and effect of rejection as described in the balance of this opinion apply equally to cases under all chapters.

sonal services contract.[5] A personal services contract is unique and money damages will often not make the employer whole. In weighing the rights of the employer to require performance against the rights of the performer to refuse to perform, California courts have allowed the employer to seek an injunction against the performer so that she could not breach the negative promises not to compete. *Warner Bros. Pictures v. Brodel,* 31 Cal.2d 766, 192 P.2d 949 (1948). It is this very remedy that Carrere seeks to avoid.

The Bankruptcy Court is a court of equity, as well as a court of law. It would be inequitable to allow a greedy debtor to seek the equitable protection of this Court when her major motivation is to cut off the equitable remedies of her employer.[6]

■ For that reason this Court finds that there is not "cause" to reject this contract, if the major motivation of the debtor in filing the case was to be able to perform under the more lucrative A Team contract. It is clear that for Carrere this is the major motivation, even if it is not the sole motivation. Therefore, rejection is denied for lack of cause.

*Rejection Would Not Relieve the Debtor of a Possible Negative Injunction*

There is yet another issue that arises and impacts on the ultimate outcome of such cases: if rejection were permitted, what would be its effect on the creditor's right to seek a negative injunction against the debtor?

Rejection of an executory contract constitutes a breach, which is deemed to have occurred immediately before the date of the filing of the petition (11 U.S.C. § 365(g)(1)). The claim for monetary dam-

ages thus becomes a claim in the estate (11 U.S.C. § 502(g)).

■ But a rejection under the Bankruptcy Code only affects the monetary rights of the creditor. It does not disturb equitable, non-monetary rights that the creditor may have against the debtor because of the breach of contract.

This issue was raised in *In re Mercury Homes Development Co.,* 4 Bankr.Ct.Dec. (CRR) 837 (Bankr.N.D.Ca.1978). The debtor/vendor of a condominium rejected the land sale contract. The buyer requested specific performance; the trustee argued that the only remedy left to the buyer was his unsecured claim for monetary damages. The court rejected the trustee's argument and held that the buyer was entitled to enforce the equitable remedies given to it by state law.

■ While the Mercury Homes case does not differentiate between the equitable rights that the aggrieved party has against the debtor and those that he has against the trustee, the Court finds no reason in this situation to make any such distinction. California law has given ABC an equitable remedy: to seek a negative injunction against Carrere and thereby prevent her from performing elsewhere. Rejection of the ABC contract would not interfere with ABC's rights to seek that equitable remedy. Rejection would merely categorize any claim for monetary damages as a pre-petition debt. Therefore, whether this Court were to allow rejection or not, Carrere cannot use the Bankruptcy Code to protect her from whatever non-monetary remedies are enforceable under state law.

On both the legal and equitable grounds set forth above, Carrere's Motion to Reject this contract is denied.

**5.** The Court has not yet determined whether this is the sole motivation of the debtor in filing this case; but it is certainly one of the key factors in her decision to file.

**6.** The courts have been wrestling with a variety of cases in which the debtor has attempted to reject an executory contract (usually for sale of real property) in Chapter 13. Because of the

good faith requirement specified in 11 U.S.C. § 1325(a)(3), rejection is not allowed if the debtor is not financially distressed and if the sole purpose of filing the bankruptcy was to reject the executory contract. *In re Chinichian,* 784 F.2d 1440 (9th Cir.1986); *In re Edward Waldron,* 785 F.2d 936 (11th Cir.1986).