ALL BLACKS B.V., a Netherlands corporation; Blue Grape B.V., a Netherlands corporation; Roadblock Music, Inc., a New York corporation, Appellants,

v.

GRUNTRUCK, a Washington partnership; Ben S. McMillan; and Thomas J. Niemeyer, Appellees.

No. C95–1604R.

United States District Court, W.D. Washington, at Seattle.

May 9, 1996.

Suzanne M. Barnett, Barnett MacLean, Seattle, WA, for All Blacks B.V., Blue Grape B.V. and Roadblock Music, Inc.

Craig E. Schuman, Kevin Arnold Bay, Ryan, Swanson & Cleveland, Seattle, WA, for Gruntruck, Ben S. McMillan and Thomas J. Niemeyer.

## ORDER AFFIRMING BANKRUPTCY COURT RULING

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on an appeal by plaintiff-appellants All Blacks B.V., Blue Grape B.V., and Roadblock Music, Inc. from a Bankruptcy Court order granting summary judgment in favor of defendant-appellees Gruntruck, Ben S. McMillan, and

Thomas J. Niemeyer and denying appellants' cross-motion for partial summary judgment.

## I. BACKGROUND

The facts of this case are alleged by the appellants as follows: appellants All Blacks B.V., Blue Grape B.V., and Roadblock Music, Inc. (hereafter collectively referred to as "ABR") are three foreign corporations engaged in the business of recording, merchandising, and publishing in the music industry.[1] Gruntruck is a "grunge rock" musical group/partnership based in Seattle of which appellees McMillan and Niemeyer are the only remaining member-partners (appellees are hereafter collectively referred to as "Gruntruck" or "debtors"). In July of 1991, Gruntruck entered into three contracts with ABR for the rights to record, merchandise, and publish Gruntruck's music.[2] The contracts provided, inter alia, that ABR would acquire the rights to Gruntruck's first album and that Gruntruck would produce five additional albums, for which ABR would also possess the rights. The contracts additionally provided that recording expenses incurred and money advances made by ABR to Gruntruck during the course of their contractual relationship would be recoupable from Gruntruck's future recording royalties.

In 1992, Gruntruck released a second album, which sold approximately 80,000 copies. Although this album was more successful than Gruntruck's first, it was not as successful as ABR had hoped. ABR had incurred expenses in producing and promoting the second album and providing additional financial support for the group's performance tours, which it hoped to recoup on future royalties from other Gruntruck recordings. However, Gruntruck did not ultimately release additional albums for production.

After the release of the second album, the contractual relationship between the parties began to disintegrate. Gruntruck began to express discontent with the contractual ar-

---

1. All Blacks B.V. and Blue Grape B.V. are Netherlands corporations; Roadblock Music, Inc. is a New York corporation. The three companies are interrelated in their business dealings and are represented here as a unit.

2. Four members of Gruntruck signed the contracts in question: Ben McMillan, Tom Niemeyer, Scott McCullum and Tim Paul. McCullum and Paul have since left the group and have been released by ABR from any contractual obligations.

rangement. Gruntruck requested additional financial assistance, which ABR agreed to provide in the form of a monthly stipend. However, this stipend was an advance, to be recouped from Gruntruck's future royalties. Gruntruck consulted with Jeffrey Light, an entertainment attorney in Los Angeles, to discuss whether Gruntruck could renegotiate the ABR contracts or have another company join in or purchase the ABR contracts. Shortly after this initial consultation, Light began consulting with insolvency attorneys in Los Angeles and Seattle. Later that year, Gruntruck debtors filed simultaneous Chapter 7 bankruptcy petitions, declaring as debt approximately $40,000 in miscellaneous expenses and over $130,000 in unrecouped advances owed to ABR.

ABR brought an adversary proceeding against Gruntruck in Bankruptcy Court, seeking to dismiss Gruntruck's Chapter 7 bankruptcy petition for bad faith. ABR also sought to enforce its personal service contracts with Gruntruck by enjoining Gruntruck from contracting with ABR's competitors and obtaining declaratory judgments from the court providing that the contracts were excluded from the bankruptcy estate, that such contracts were still enforceable in a non-bankruptcy forum, and that ABR was entitled to injunctive relief for Gruntruck's alleged breach of these contracts. These separate actions were then consolidated with Gruntruck's bankruptcy proceeding.

After an extended period of discovery,[3] Gruntruck filed a motion for summary judgment to dismiss ABR's claims. In response, ABR filed a cross-motion for partial summary judgment regarding its declaratory judgment claims. The Bankruptcy Court, Judge Steiner presiding, granted Gruntruck's motion and denied ABR's motion, finding that the contracts in question were the property of the bankruptcy estate and were rejected by operation of law and that the debtors did not file their bankruptcy petitions in bad faith.

ABR appeals the Bankruptcy Court decision, arguing that the Bankruptcy Court erred in its findings of law regarding the status of the personal service contracts. ABR further argues that the Bankruptcy Court erred in finding that ABR had presented insufficient evidence to prove its bad faith claim against Gruntruck.

## II. DISCUSSION

### A. Standard of Review

 The factual component of the Bankruptcy Court's findings are reviewed under the clearly erroneous standard; the legal component is reviewed *de novo*. *In re Dill*, 731 F.2d 629, 631 (9th Cir.1984). In reviewing the grant or denial of a summary judgment motion, the court applies the same test which the Bankruptcy Court applies under BANKR.R. 7056 and FED.R.CIV.P. 56(c). *In re Seaway Exp. Corp.*, 105 B.R. 28, 30 (9th Cir. BAP 1989); *In re Stuerke*, 61 B.R. 623, 625 (9th Cir. BAP 1986). A grant of summary judgment will be affirmed only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Stuerke*, 61 B.R. at 625. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The offering of a mere "scintilla of evidence" will not be sufficient to withstand summary judgment. *Id.* at 251, 106 S.Ct. at 2511–12. Thus, in order to succeed on appeal, ABR must offer specific facts which demonstrate either that there is a genuine issue of material fact or that Gruntruck was not entitled to judgment as a matter of law.

ABR raises two principal arguments on appeal. First, ABR asserts that the Bankruptcy Court erred in finding that Gruntruck's personal service contracts were unenforceable because Bankruptcy Code provisions 11 U.S.C. § 365(c) and 11 U.S.C. § 541(a)(6) bar the court from including such contracts in the bankruptcy estate. Second, ABR argues that the

---

**3.** The initial hearing in this matter was delayed after the Bankruptcy Court granted ABR's motion to extend discovery pursuant to BANKR.R. 7056 and FED.R.CIV.P. 56(f).

Bankruptcy Court should have dismissed Gruntruck's bankruptcy petition for bad faith pursuant to 11 U.S.C. § 707(a) because ABR had alleged specific facts which established Gruntruck's bad faith as a matter of law. The court will consider each of these arguments in turn.

## B. Enforceability of Executory Personal Service Contracts

The status of a debtor's executory contracts after filing for Chapter 7 bankruptcy is addressed by two sections of the Bankruptcy Code: 11 U.S.C. § 365 and 11 U.S.C. § 541(a)(6). Section 365 of the Bankruptcy Code establishes when the executory contracts of a debtor may be assumed or rejected during the bankruptcy process. Section 365(a) provides in relevant part that the trustee may assume or reject any executory contract, subject to the court's approval, except as provided in subdivisions (c) and (d). Section 365(c) provides:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract ... [ ] from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession ... [ ]; and (B) such party does not consent to such assumption or assignment; ...

Section 365(d) provides that, for petitions filed pursuant to Chapter 7 of the Bankruptcy Code, where the trustee does not assume or reject an executory contract of the debtor within 60 days after the order for relief, the contract is deemed rejected. Section 541(a)(6) directs that the post-petition proceeds from any personal services performed by the debtor may not be included in the bankruptcy estate.

ABR argues that the Bankruptcy Court below erred in finding that Gruntruck's personal service contracts were rejected by operation of law pursuant to 11 U.S.C. § 365(d)(1). Instead, ABR contends that § 365(c) bars the trustee from either assuming or rejecting the contracts, and that the contracts are therefore not part of the bankruptcy estate and are still enforceable. ABR further asserts that § 541(a)(6)'s exclusion of the personal service contract proceeds demonstrates that personal service contracts were not intended to be included in the bankruptcy estate. In support of this argument, ABR maintains that *Matter of Taylor,* 913 F.2d 102 (3rd Cir.1990), the leading reported appellate decision dealing with this issue, was wrongly decided. Instead, ABR cites four cases to advance their position that the personal service contracts cannot be rejected as a matter of law: *In re Noonan,* 17 B.R. 793 (Bankr.S.D.N.Y.1982); *In re Carrere,* 64 B.R. 156 (Bankr.C.D.Cal.1986); *In re Bofill,* 9 B.C.D. 1371, 25 B.R. 550 (Bankr.S.D.N.Y. 1982); and *Turner v. Avery,* 947 F.2d 772 (5th Cir.1991). After reviewing the cases cited by ABR, this court finds no support for ABR's position.

In *Taylor,* the debtor was a musical artist who had filed bankruptcy to avoid debts incurred under personal service contracts with a music production company. *Taylor,* 913 F.2d at 104–05. Like ABR, the music company had brought an adversary proceeding, and had argued that § 365(c) and § 541(a)(6) barred the court from rejecting the contracts. *Id.* at 106. The court rejected the music company's argument, finding that, although § 365(c) limits the trustee in assuming or assigning a personal services contract, a "straightforward reading" of the statute shows that § 365(c)'s limits have no effect on the trustee's power to reject the personal services contract under § 365(a). *Id.* The court additionally found the company's argument that § 541(a)(6) prohibited the trustee from exercising authority over the "contracts" because it limited authority over the post-petition proceeds to be unpersuasive, noting that

[i]t serves no useful purpose to speak generally about whether "the contract" becomes part of "the estate." The real question is the status of the reciprocal rights and obligations of the contracting parties arising after the petition was filed.

*Id.* Regarding these obligations, the court held that "[i]t is the trustee's decision

(whether to assume or reject) that determines whether the benefits of an executory contract will or will not become property of the estate," thus finding that § 365(a) does permit the trustee to reject executory personal service contracts. *Id.* at 107.

In arguing against the soundness of the *Taylor* decision, ABR asserts that the court's "conclusion represents a logical leap that is contrary to both the spirit and letter of the law." However, this court finds to the contrary. In an oft-quoted passage from *Local Loan Co. v. Hunt,* the Supreme Court noted that

> [o]ne of the primary purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."

*Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (quoting *Williams v. U.S. Fidelity & G. Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1913)). The *Taylor* decision is totally consistent with the fresh start policy lauded by the Court as the underlying purpose of the Bankruptcy Code. In addition, *Taylor* is entirely consistent with the letter of the law, which allows the executory contracts to be rejected, either by the trustee pursuant to § 365(a), or by operation of law 60 days after the commencement of the petition pursuant to § 365(d)(1). ABR's urging that *Taylor* was wrongly decided is rejected by this court.

The cases cited by ABR in support of its case similarly militate against reaching ABR's intended result. *Noonan* also involved an adversary proceeding brought by a music company-creditor against a musician-debtor to enforce personal service contracts. In *Noonan,* the music company attempted to prevent the debtor from rejecting the personal service contracts under § 365(d)(1), by petitioning to convert the debtor's Chapter 7 bankruptcy petition into a Chapter 11 filing. The court held that personal service contracts could not be included in the bankruptcy estate for the purposes of evaluating whether the debtor's assets were sufficient to sustain a Chapter 11 bankruptcy petition. Although this holding might seem to support ABR's position that the trustee wields no authority regarding personal service contracts, the court justified its result with language that ultimately undermines ABR's position. The court concluded that absorbing the contracts into a Chapter 11 bankruptcy estate would effectively force the debtor to perform under his personal service contracts, contravening common law rules regarding the enforceability of personal service contracts, violating the spirit of the Thirteenth Amendment prohibition on involuntary servitude, and denying the debtor his statutorily mandated fresh start. Thus, the equitable result reached by the court in *Noonan* is clearly in opposition to the result sought by ABR.

The three remaining cases cited by ABR are equally inapposite. Although *Carrere* held that the trustee had no standing to reject the debtor's personal service contract under Chapter 7 or 11, *Carrere,* 64 B.R. at 159, other appellate courts have read *Carrere* as reaching that conclusion because of the debtor's bad faith petition and have declined to follow its holding.[4] *Bofill* held that personal service contracts were not part of the bankruptcy estate for the purpose of determining attorney's fees, but also held that such contracts could legitimately be rejected by operation of law pursuant to § 365(d).[5] *Bofill,* 9 B.C.D. at 1372, 25 B.R. 550. Finally, *Turner v. Avery* held that "the contingent

---

4. In response to the *Carrere* decision, the *Taylor* court noted that "[i]t seems probable that the principal basis for the court's decision was its conclusion that the bankruptcy proceeding itself might well have been dismissed," thereby rejecting the "notion that a trustee lacks power to deal with personal-service contracts." *Taylor,* 913 F.2d at 107.

5. "The trustee's accusation that the debtor abused the process of the bankruptcy court by filing the petition solely to afford herself the opportunity to reject the executory contract under Section 365(d) of the Code is unfounded. Section 365(d) is not a 'legal loophole,' but rather it allows the rejection of the contract so as to prevent parties in contractual or lease relationships with the debtor from being left in doubt regarding their status vis-a-vis the estate."
*Bofill,* 9 B.C.D. at 1372, 25 B.R. 550.

fee contracts at issue, as executory contracts, do not fall into the bankruptcy estate, but that fees earned thereon prior to the date of filing the bankruptcy petition do," thereby reaching a result which was effectively equivalent to that of the *Taylor* court. *Turner*, 947 F.2d at 774.

Thus, ABR has offered no persuasive support for its position that Gruntruck's personal service contracts may not be rejected as part of the bankruptcy proceeding and that ABR should be granted leave to enforce these contracts in some non-bankruptcy forum. Instead, the cases cited suggest that allowing ABR to achieve its goals would contravene the primary purpose of the Bankruptcy Code. For these reasons the court hereby affirms the Bankruptcy Court decision below on this issue.

## C. Gruntruck's Alleged Bad Faith

Whether reviewed under the clearly erroneous standard, *In re Dill*, 731 F.2d at 631, or abuse of discretion standard, *In re Leach*, 130 B.R. 855, 856 (9th Cir.BAP 1991), this court affirms the Bankruptcy Court decision to deny ABR's motion for summary judgment regarding its claim of bad faith pursuant to 11 U.S.C. § 707(a) and grant Gruntruck's motion for summary judgment on this issue.

■■■ In support of its argument that the Bankruptcy Court erred in finding Gruntruck petitioned for bankruptcy in good faith, ABR raises three points. First, ABR argues that Gruntruck was not in a genuine financial crisis, but merely experiencing a "temporary cashflow problem." ABR further suggests that this temporary problem could have been remedied if the debtors had accepted ABR's offers to pay them outstanding royalties or taken advantage of income available from debtor McMillan's inheritance.

The Bankruptcy Court did not directly address the validity of ABR's assertions, but it did find that Gruntruck's allegations neither "question[ed] the integrity of the bankruptcy system," nor did they demonstrate "manifest dishonesty" toward the court. In other words, the court accepted Gruntruck's assertion that it was experiencing real and imme-

diate financial hardship. ABR has presented no evidence to suggest that this hardship could have been remedied by the means recommended. Gruntruck could only have accepted additional royalty payments from ABR at the risk of increasing the total royalties owed. As such, ABR's offer to "pay" Gruntruck was more like a loan which would be repayable as soon as Gruntruck produced another album. In addition, ABR's own pleadings demonstrate that McMillan's inheritance amounted to only $3,000 per year, with a future interest of $50,000 to be paid in 2001. ABR has offered no proof that McMillan's inheritance payments could be rescheduled to pay Gruntruck's current debts. Thus, there was no clear error by the Bankruptcy Court regarding the legitimacy of debtors' indebtedness.

■■■ Second, ABR contends that the court erred in finding that Gruntruck's contractual obligations to ABR constituted a "debt" under the Bankruptcy code. Section 101(12) of the Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(5). As Gruntruck contends in its pleadings, ABR could pursue payment for damages as a remedy for Gruntruck's breach, which would qualify ABR's right to relief as a "claim." However, more practically the court agrees with the Bankruptcy Court's observation that "there's no meaningful distinction between financial obligations and obligations to perform. In both situations, the debtors are under a liability that threatens their ability to move forward financially; and the Bankruptcy Code speaks directly to both." Thus, the court affirms the Bankruptcy Court ruling on this point.

Third, ABR asserts that Gruntruck's sole purpose in petitioning for bankruptcy was to avoid the contracts and seek out a more lucrative contract with ABR's competitors. The Bankruptcy Court explicitly addressed these allegations, and found that "discovery has not uncovered any significant evidence of such a deal." This court has reviewed the record and finds no evidence suggesting that this was Gruntruck's intent in petitioning for bankruptcy. Thus, ABR's third argument fails.

In conclusion, the court finds that ABR has failed to demonstrate that the Bankruptcy Court erred in denying its motion for summary judgment and granting summary judgment for Gruntruck.[6] Therefore, the court affirms the Bankruptcy Court ruling on this issue.

### III. CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court in this matter is hereby AFFIRMED.

---

6. In making this determination, the court notes that ABR has had ample opportunities to discover additional facts which might have supported its allegations, both during initial discovery and the extended discovery period, at the trial level.