**In re Badou JACK, Debtor.**

**No. BK–S–12–13215–BAM.**

United States Bankruptcy Court, D. Nevada.

May 9, 2012.

Thomas E. Crowe, Las Vegas, NV, for Debtor.

## OPINION

BRUCE A. MARKELL, Bankruptcy Judge.

The debtor, Badou Jack (aka "Jack the Ripper"), is a professional boxer. He is a Swedish citizen who boxed for Gambia in the 2008 Olympics. In 2011, Jack signed a management contract with Ringleader Boxing Management, LLC ("Ringleader"). The contract was to run for five years, and essentially provided that Ringleader would manage Jack's career in return for one-third of Jack's earnings as a professional boxer.

The agreement also provided that Ringleader would provide Jack with an apartment for one year, and during that year Ringleader would pay Jack $800 per month. Ringleader performed during the first year, but not to Jack's satisfaction. According to Jack, "Mr. Heid [the representative of Ringleader] placed [Jack] in an apartment frequented by drug dealers and prostitutes in a very bad area of town. The apartment he provided was completely empty (no furniture, no kitchen utensils, no linens, etc.) except for a blowup mattress for a bed."

Jack also complained that Heid and Ringleader had misrepresented their status as licenced boxing managers and promoters. There were other disputes, including the use of racial ephithets. Things came to a head when the one-year support provision ended. Jack felt at wit's end; in his words:

> [E]ven though [my] work Visa allows [me] to only work for [my] boxing promoter, Mr. Heid kept insisting that I find a regular job outside of [my] boxing career and be paid 'under the table' without paying taxes. [I] refused to get a regular job based upon his Visa provisions and the fact that [I] refused to break the law.

So Jack filed bankruptcy. He did so, in the words of his counsel, "to terminate a contract which is not in Debtor's best interest. . . ."

That Jack filed bankruptcy for the sole purpose of rejecting the Ringleader contract is underscored by Jack's filings in this case. He listed only one creditor in his petition: Ringleader.[1] His only listed assets were $1,200 in a bank account ($1,000 of which he exempted under Nevada's wild card exemption), $50 in cash, and $300 in personal effects including some clothes and a laptop computer. After the first meeting of creditors under Section 341(a), the Trustee filed a report of no distribution.

Ringleader moved to dismiss Jack's case for a lack of good faith. Jack opposed, raising a host of objections as to the validity of his contract with Ringleader, from illegality to unconscionability. Some of these defenses may well have merit. But that is irrelevant to the current motion. The issue here is whether cause exists under 11 U.S.C. § 707(a) to dismiss this Chapter 7[2] case.

Ringleader asserts that Jack's actions were the very essence of bad faith. It points to Section 707(b)(3), added in 2005, which states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (*including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor*) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3) (emphasis supplied). There is no doubt that Section 707(b)(3) says what it says, but Jack counters that Section 707(b)(3) covers only "an individual debtor . . . whose debts are primarily consumer debts."[3] Jack's case, in contrast, is about business debt: the Ringleader contract, and only the Ringleader contract.

■ Jack has a point. The Ninth Circuit has rejected the application of standards in Section 707(b) related to consum-

---

1. He did, however, list two executory contracts. His management agreement with Ringleader, and a Co–Promotional Rights Agreement with Warriors Boxing & Promotions. Jack did not list Warriors Boxing & Promotions as a creditor, even though the effect of his filing his chapter 7 case would be an automatic rejection of that contract.

2. Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

3. "Consumer debt" is defined in Section 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose."

ers in construing Section 707(a). *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir.2000). In that case, a consumer had engaged in a credit card bust-out scheme that the creditor pointed to as grounds for dismissal. The court rejected comparisons of the debtor's conduct to the "substantial abuse" standard in Section 707(b) as the motion had been brought under Section 707(a). As stated by the Ninth Circuit:

> Padilla's bankruptcy can only be dismissed under § 707(a) if credit card bust-out is not a type of misconduct or cause contemplated by any specific Code provision applicable to Chapter 7 petitions.

222 F.3d at 1193. As a consequence, the test in this circuit for determining whether Section 707(a) is met is:

> If the asserted "cause" is contemplated by a specific Code provision, then it does not constitute "cause" under § 707(a).... If, however, the asserted "cause" is not contemplated by a specific Code provision, then we must further consider whether the circumstances asserted otherwise meet the criteria for "cause" for [dismissal] under § 707(a).

*Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 970 (9th Cir.2007) (citing *In re Padilla*, 222 F.3d at 1193–94).

In *Padilla*, the creditor in a case of consumer debt tried to use Section 707(a) when there was a more specific and relevant statute available—in that case, the "substantial abuse" provision for consumer debtors found in Section 707(b). Given the specific application of Section 707(b) to consumers, the court held that use of Section 707(a) was error.

Here, the converse is presented. Ringleader wants to apply Section 707(b)—normally applicable to consumer debtors—to a case governed by the nonconsumer provisions of Section 707(a). Jack persuasive-ly asserts that *Padilla* prevents this argument.

But Jack takes his argument one step too far. He then argues that because Section 707(b)(3) specifically mentions rejections of personal services contracts while Section 707(a) does not, his filing to reject a personal services contract cannot constitute cause under Section 707(a). He essentially invokes the maxim *expressio unius est exclusius alterius* (the expression of one thing is the exclusion of the other). That is, he argues that because the consumer debt provisions permit dismissal for a lack of good faith and abuse, and the nonconsumer provisions do not, a nonconsumer case cannot be dismissed for a lack of good faith or for abuse.

 That argument simply proves too much. *Padilla* and *Sherman* require a showing that the actions here are not "contemplated by a specific Code provision," *In re Sherman*, 491 F.3d at 970, in order for these to be excluded by cause as contemplated by Section 707(a). It is a strained extension of *expressio unius* to find that a provision adopted as part of a wholesale revision of consumer bankruptcy law by implication affected the law with respect to nonconsumer debt. It is almost beyond thinking, and certainly hasn't been proved, that the addition of Section 707(b)(3) had the intended effect of taking away a court's power to dismiss a nonconsumer chapter 7 case for either bad faith or for abuse. As a result, this court finds that Section 707(b)(3) is not the type of clause "contemplated" by Congress as one eliminating lack of good faith or abuse as "causes" supporting dismissal under Section 707(a).

But showing that the actions here are not "contemplated by a specific Code provision" is only the beginning of the analysis. The court "must further consider whether the circumstances asserted otherwise meet the criteria for 'cause' for [dis-

missal] under § 707(a)." *In re Sherman,* 491 F.3d at 970.

Not surprisingly, given Congress's attention to the issue in 2005, filing to reject a personal services contract has not been, and is not, unknown. *See generally* Stuart J. Wald, *Bankruptcy and Personal Services Contracts: What Works and What Doesn't, and Why,* 116 BANKING L.J. 605 (1999). Many cases exist in which debtors file with the sole or primary purpose of rejecting a burdensome personal services contract. *See, e.g., In re Taylor,* 913 F.2d 102 (3rd Cir.1990) (singer seeks to reject a recording contract); *In re Sammons,* 210 B.R. 197 (Bankr.N.D.Fla.1997) (boxer files listing one debt and one creditor); *All Blacks B.V. v. Gruntruck,* 199 B.R. 970 (W.D.Wash.1996) (band seeks to reject a recording contract); *In re Carrere,* 64 B.R. 156 (Bankr.C.D.Cal.1986) (actress on General Hospital soap opera files to reject contract to jump to A Team television show); *In re Noonan,* 17 B.R. 793 (Bankr. S.D.N.Y.1982) (singer seeks to convert to Chapter 7 for the purpose of rejecting recording contract).

They show varying results. Some courts permit the filing; others don't. *See, e.g., In re Taylor,* 913 F.2d at 108 (permit); *In re Sammons,* 210 B.R. at 199 (does not permit); *All Blacks B. V.,* 199 B.R. at 976 (permit); *In re Carrere,* 64 B.R. at 160 (does not permit); *In re Noonan,* 17 B.R. at 800–01 (permit).

■ But there is a unifying theme. A debtor may file bankruptcy for the purpose of rejecting an executory contract only if he or she is otherwise experiencing financial distress (there of course are other requirements, but financial distress is necessary). That principle was recognized in *In re Sammons,* a case eerily similar to

this case. There, a professional boxer filed Chapter 7 listing one creditor.[4] That creditor was the counterparty to a management contract that the debtor sought to reject. On the creditor's motion, the court dismissed the case. Canvassing the cases listed above, the court correctly found that rejection was permitted only when "rejection of the executory contract served a useful purpose for a debtor who was indeed financially troubled." *In re Sammons,* 210 B.R. at 199 (quoting *In re Waldron,* 785 F.2d 936, 939 (11th Cir.1986)).

■ Jack has not shown that he is financially troubled. As in *In re Sammons,* Jack lists but one creditor. And other than the breach occasioned by the bankruptcy filing, he does not owe that creditor anything at present. As a consequence, he may be poor, and he may be unable to work other than as a boxer, but he is not burdened by debt he can't pay. Rather, he is burdened by a contract as to his future actions, the very contract that he took advantage of for a year (even if in squalid and unwelcome circumstances) and sought to reject only when, by its terms, he stopped receiving support under it. Filing bankruptcy for the sole purpose of rejecting such a contract is an abuse of the bankruptcy system that constitutes cause for dismissal under Section 707(a).

■ Even if Jack rejected the contract, however, it would not help him much. A bankruptcy discharge affects the *in personam* liability of debtors; that is, it provides a bar against enforcement of prepetition claims to the extent a creditor seeks recovery from the debtor himself. While rejection of the Ringleader contract would classify Ringleader's monetary claims for breach as unsecured claims subject to the discharge, Ringleader has addi-

---

4. After the creditor moved to dismiss, the debtor amended his petition and schedules to add eight additional creditors. 210 B.R. at 198.

tional rights that are not "claims" within the meaning of Section 101(5). While non-bankruptcy law might well not allow specific performance—forcing Jack to box for Ringleader—it very well could allow a negative injunction against Jack boxing for anyone else. If irreparable by money damages, these rights would not be affected by the discharge. *In re Carrere*, 64 B.R. at 160. They are not unlike the rights to stop someone from competing who is subject to a prepetition covenant not to compete, *See, e.g., Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496–97 (6th Cir.2001) (collecting cases on both sides, but noting the majority view that noncompete claims are not affected by the bankruptcy discharge); *see also Maids Int'l, Inc. v. Ward (In re Ward)*, 194 B.R. 703, 709 (Bankr.D.Mass.1996); *In re Hughes*, 166 B.R. 103, 106 (Bankr.S.D.Ohio 1994); *May v. Charles Booher & Assoc., Inc. (In re May)*, 141 B.R. 940, 944 (Bankr.S.D.Ohio 1992); *In re Peltz*, 55 B.R. 336, 338 (Bankr.M.D.Fla.1985); Michael G. Williamson & Stephanie Crane Lieb, *The Outer Limits of Dischargeability—When Is a Claim a Claim in Bankruptcy?*, 83 FLA. B.J. 29 (2009). As a consequence, even if Jack were to receive a discharge, he would still potentially face messy litigation over his boxing, litigation not covered by the protective shield of the bankruptcy discharge.

Jack filed his bankruptcy to reject a contract with his sole listed creditor. His schedules indicate that he owes money to no one else. While his circumstances are unfortunate, his misfortune is not related to existing debt. His filing to achieve the rejection of a nonconsumer contract in such circumstances is an abuse of the bankruptcy system that constitutes cause under Section 707(a). Case dismissed.